**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**UNITED STATES OF AMERICA,**

             Plaintiff**,**

**v.**

                                **Case No.:   1:19-CR-30
(JUDGE KLEEH)**

**DERON PARRISH, and
ANDRE PARRISH**
             Defendants.

## REPORT AND RECOMMENDATION RECOMMENDING DEFENDANTS' MOTIONS TO SUPPRESS BE DENIED

      This matter comes before the undersigned pursuant to the District Court's Order (ECF No. 33) referring Defendant DeRon Parrish's Motion to Suppress *Physical Evidence* (ECF No. 32) filed on July 2, 2019, to the undersigned for consideration and issuance of a Report and Recommendation to Honorable United States District Judge Thomas S. Kleeh. Defendant Andre Parrish filed a Notice to Join in Defendant DeRon Parrish's Motion to Suppress on July 3, 2019 (ECF No. 35). The Government filed a Response (ECF No. 37) to the Defendants' Motion to Suppress on July 8, 2019.

      On August 16, 2019, the undersigned held a consolidated motion hearing at which appeared the Government by counsel, Andrew Cogar, Assistant United States Attorney, and the Defendants in person and by their counsel, Richard Walker, Assistant Federal Public Defender for DeRon Parrish; and Charles T. Berry, Esq. for Andre Parrish. Following the motion hearing, the undersigned allowed the parties two weeks, until August 30, 2019, to submit supplemental briefs for the Court's consideration. The Defendants submitted a supplemental brief on August 27, 2019. (ECF No. 47). The Government submitted a supplemental brief in response on August 30, 2019.

1

(ECF No. 50). Accordingly, this matter is now ripe for a Report and Recommendation to Honorable United States District Judge Thomas S. Kleeh.

This Report and Recommendation examines the following issues: (1) Whether the statements provided in Officer Moore's affidavit supporting the application for a search warrant were sufficient to support the State magistrate's probable cause determination; (2) Whether the procedures followed by the Morgantown Police Department and State magistrate for obtaining the search warrant were adequate; and (3) Whether, nonetheless, the doctrine of good faith applies.

For the reasons set forth herein, the undersigned **RECOMMENDS** that the Defendants' Motion to Suppress *Physical Evidence* (ECF No. 32) be **DENIED**.

## I.      BACKGROUND AND PROCEDURAL HISTORY

On November 25, 2018, Officer Dakota Moore of the Morgantown Police Department was dispatched for a burglary report at 112 Cornell Avenue, Apartment B, in Morgantown, WV.[1] (ECF No. 32-2 at 7). Upon arriving at the apartment, Officer Moore spoke with two WVU students, Vaughn Jablonski and Andrew Peck, who had just returned from Thanksgiving break to find that their apartment had been broken into and their property was stolen. Id. The two showed Officer Moore that their bedroom doors had been broken. Id. On one of the doors, Officer Moore noted what appeared to be a shoe print. Id. Peck was missing a Bluetooth speaker from a wooden chest in his bedroom. Id. A third room upstairs was missing a "grey 12-gun Field and Stream firearm safe." Id. The safe was described as very heavy and had been secured to the floor. Id. Officer Moore noted the "impression in the carpet where the safe had sat" and "observed that the carpet had been pulled up when the safe was removed from the floor."

---

[1] This summary of the underlying facts is taken exclusively from the Morgantown Police Department reports attached to defendants' motion to suppress as Exhibit B. (ECF No. 32-2).

The residents provided that the safe contained "approximately $1500" in cash, a social security card and passport, as well as three 12-gauge shotguns. Id. The shotguns were detailed as follows: one Tri-Star Unland Hunter 12 Gauge Over/Under Shotgun valued at $430; one Stoeger P350 12 Gauge Pump Shotgun valued at $350; and one Mossberg 500 12 Gauge Pump Shotgun valued at $360. Officer Moore further observed "several gouges and scratches to the walls/hand rail in the stairwell from where the safe had been slid down the stairs." Id.

The investigating officers then went outside of the residence and observed "gouge marks to the windowsill which appeared to have been created by a pry tool." Id. Furthermore, one of the "locking mechanisms on the window had been broken." Id. Officer Moore also noticed slide marks in the yard "where the safe had been slid across the grass" further providing that the marks "led from the back door, around the east side of the house, and to the driveway in front of the residence." Id. Officer Moore walked next door and spoke with the victims' neighbor to ask if she had noticed any suspicious activity occurring recently at the victims' apartment. Id.

Upon speaking with the neighbor, she stated that on November 25, 2018, between 1:00 AM and 2:00 AM, she noticed a "white U-Haul van" with "side doors parked outside of the victim's apartment." Id. The neighbor stated she saw "two individuals get out of the van." Id. The neighbor was unable to make any physical identifications of the individuals' characteristics because they were "wearing dark colored clothing with their hoods up." The neighbor further stated she saw "the two suspects carry 'a large, heavy chest or box' out of the residence and load it into the van." Id. The neighbor relayed that she did not call 911 because "she believed it to be" the individuals who lived there. Id. The neighbor stated that the van had been "backed into the driveway." (ECF No. 32-2 at 8).

Officer Moore "observed a fresh tire track in the mud adjacent to the driveway from where the van had been driven over the curb" and "determined that the tire track would have been made by the rear passenger side tire as the van was backed in." Id.  Upon examining the tire track, Officer Moore reasoned that the track had been made by a passenger vehicle "all-season type tire as opposed to an aggressive style truck tire." Id. The residents confirmed that the tire track was not there before and had been made recently. Id.

On November 26, 2018, Officer Moore contacted the West Virginia U-Haul Traffic Office "and spoke with Leslie Withrow." Id. Officer Moore inquired about U-Haul vans "rented over the weekend in the Morgantown Area." Id. Officer Moore learned "at least three had been rented out over the weekend" that fit the description Officer Moore was given by the witness neighbor. Id. As described by Officer Moore in his report, the first "was a Chevrolet van rented from Valley Mart on Van Voorhis Road. The second was a Ford Transit rented by Willy's Hot Shot on Grafton Road. The third was a Ford Transit rented from Exit 1 Storage on Hornbeck Road." Id. Officer Moore visited all three locations and examined each of the three vans. Id.

Based upon the evidence Officer Moore gathered while investigating the victims' apartment at 112 Cornell Avenue, Officer Moore deduced that the "suspect vehicle likely would have mud on the rear passenger tire from driving over the curb and mud inside of the van, as the safe had been dragged through the muddy yard." Id. While examining each of the vans, Officer Moore observed that the vans at "Valley Mart and Willy's Hot Shot were relatively clean" and he "observed nothing to indicate that they were the suspect vehicle." Id. In addition, Officer Moore later spoke again with the neighbor who witnessed the U-Haul van at the victims' apartment and she "confirmed that the U-Haul van was a Ford Transit after" Officer Moore "showed her pictures of different U-Haul vans." Id.

4

Officer Moore then contacted an individual by the name of James Mitchell, the manager at Exit 1 Storage, LLC at 445 Hornbeck Road in Morgantown, West Virginia. Id. Officer Moore asked if the location had rented any U-Haul vans over the past weekend. Id. Mr. Mitchell stated that they rented "one van, a Ford Transit, on Saturday," November 24, 2018 at 4:45 PM and he further stated that the van was "returned on Sunday," November 25, 2018 at 9:57 AM. Id. Officer Moore noted that this matched the time frame of the crime. Id. Officer Moore asked Mr. Mitchell if the van had sustained any damage or if anything "stood out when it was returned." Id. Mr. Mitchell stated that "when the van was returned, they charged the renter (DeRon Parrish) a $25 cleaning fee because the inside of the van was 'covered in mud' and the vehicle had to be mopped and the upholstery on the driver and passenger seats cleaned." (ECF No. 32-2, at 8-9).  Officer Moore visited Exit 1 Storage and asked to view the van. Id. at 9. Mr. Mitchell informed Officer Moore that the inside of the van had been cleaned earlier, however, at the time the van was returned, "there was mud on the driver and passenger seats, mud on the steering wheel and dashboard, and mud throughout the rear cargo area." Id.

Officer Moore asked Mr. Mitchell if the exterior of the van had been washed. Id. Mr. Mitchell informed Officer Moore that the exterior of the van "had not been disturbed." Id. Officer Moore then observed that "the rear passenger tire of the van had mud approximately halfway up the sidewall." Id. Officer Moore noted that the mud on the tire "was consistent with the soil at the crime scene" as well as further observing that the "tread on the tires was consistent with the impressions left in the mud at the crime scene." Id. Mr. Mitchell provided Officer Moore with a copy of the invoice from the van rental. Id. Officer Moore discovered from the invoice that the van had been rented to a "DeRon Parrish" with an address located on Brockway Ave. in Morgantown, WV. Id. Mr. Mitchell further stated that DeRon Parrish provided a Pennsylvania driver's license.

Id. Officer Moore attempted to "run the license through Pennsylvania and the surrounding states" upon which MECCA 911 advised they could not find any return with that license number. Id.

Officer Moore further observed that the van had been rented to Parrish with "7130 miles on the odometer" and the van was returned by Parrish with "7146 miles on the odometer. Id. Officer Moore noted that "16 miles traveled would be consistent with the distance traveled from the U-Haul dealer to Cornell Avenue, then to Parrish's apartment on Brockway and back to the U-Haul dealer." Id.

Later, Officer Moore responded to "321 Brockway Avenue, Apartment B, and walked around the residence" in an attempt to "locate any evidence of the crime." Id. Officer Moore observed that the "mailbox of the apartment was labeled 'A. Parrish.' Id. Based on this information, Officer Moore located an "Andre Parrish . . . with that address in In-Synch RMS." Id. Officer Moore further observed "the smell of raw marijuana coming from the back door of the apartment." Id.

On November 27, 2018, Officer Moore obtained a search warrant for Parrish's apartment at Brockway Avenue in Morgantown. The warrant was executed in conjunction with the Mon Metro Drug Task Force and ATF at approximately 3:30 PM. Id. A vehicle registered to DeRon Parrish was parked outside of the apartment at the time the warrant was executed. Id. DeRon Parrish was the only person in the apartment at the time of the search. Id. Officer Moore located "three stolen shotguns (confirmed by serial numbers) in the closet of the upstairs bedroom in the apartment (later determined to be Parrish's mother's room). Id. Law enforcement officers further "located the safe which had the door removed from it in the downstairs portion of the apartment as well as a large mason jar in the kitchen cupboard containing $2992 cash and a mason jar containing packaged marijuana in plain view on a table located in the kitchen common area." Id.

Detectives of the Morgantown Police Department "located Peck's passport and social security card in a drawer in the dining room area." Id. Officer Moore then "located a pair of muddy size 11 Nike shoes in the kitchen area." Id. Officer Moore observed that the tread of the shoes "matched the shoe print found on Jablonski's door frame and the mud on the shoes was consistent with the soil at the crime scene and on the U-Haul van." Id. at 9-10. Officer Moore located "the box for the shoes in DeRon Parrish's bedroom on the bottom level of the apartment." Id. at 10. DeRon Parrish was "transported to the Morgantown Police Department to be interviewed by detectives." Id. DeRon Parrish later "confessed to detectives that he and his brother, Andre Parrish, committed the crime." Id. DeRon Parrish was arrested and charged with Grand Larceny, Nighttime Burglary, Unlawful Possession of a Deadly Weapon, and Conspiracy. Id. Andre Parrish was arrested and charged with Grand Larceny, Nighttime Burglary, and Conspiracy. Id.

On November 28, 2018, Officer Moore "obtained and executed a second search warrant at 321 Brockway Avenue. Four cell phones total were seized for evidence." Id.

On May 7, 2019, the Grand Jury in the United States District Court for the Northern District of West Virginia returned a Three Count Indictment against Andre Parrish and DeRon Parrish charging both in Count One with Aiding and Abetting the Possession of a Stolen Firearm; charging DeRon Parrish in Count Two with Unlawful Possession of a Firearm as a Convicted Felon; and charging Andre Parrish in Count Three with Unlawful Possession of a Firearm as a Drug User. (ECF No. 1). Both DeRon Parrish and Andre Parrish had their initial appearances before the undersigned on June 4, 2019. (ECF No. 17). Andre Parrish had an arraignment before the undersigned on June 7, 2019 (ECF No. 27). DeRon Parrish had his arraignment before the undersigned on June 10, 2019 (ECF No. 28).

On July 2, 2019, Counsel for Defendant DeRon Parrish, Richard Walker, Assistant Federal Public Defender, filed the Motion to Suppress *Physical Evidence* that is the subject of this Report and Recommendation. (ECF No. 32). Counsel for Defendant Andre Parrish, Charles Berry, Esq., filed a Notice to Join in the Motion to Suppress on July 3, 2019. (ECF No. 35). Honorable United States District Judge Thomas S. Kleeh referred this matter to the undersigned for a hearing and Report and Recommendation on July 2, 2019. (ECF No. 33). A motion hearing was held before the undersigned on August 16, 2019. (ECF No. 44). Following the motion hearing, the undersigned allowed the parties two weeks, until August 30, 2019, to submit supplemental briefs for the Court's consideration. The Defendants submitted a supplemental brief on August 27, 2019. (ECF No. 47). The Government submitted a supplemental brief in response on August 30, 2019. (ECF No. 50).

## II.   <u>SUMMARY OF TESTIMONY</u>

As an initial matter, the undersigned inquired of Defendants' Counsel as to their desire to hold a hearing pursuant to <u>Franks v. Delaware,</u> 438 U.S. 154 (1978) as Defendants raised <u>Franks</u> issues in their Motion to Suppress alleging the affidavit in this matter contained knowing and reckless falsities. Counsel for Defendants indicated they wished to proceed with the motion hearing in normal course in which they would make reasonable inquiries of the witness with regard to the veracity of the statements contained in his affidavit and complaint for a search warrant. (1:00:55 – 1:01:15).

Officer Dakota Moore testified he is a police officer with the Morgantown Police Department. He has worked in this capacity for approximately three years. Officer Moore testified that on November 25, 2018, around 8:00 PM, he responded to 112 Cornell Avenue, Apartment B, Morgantown, in Monongalia County, W.V., after receiving a report from the dispatcher regarding

a burglary. (Audio Recording of Motion Hearing, August 16, 2019, FTR Gold, at 1:03:39).[2]

Officer Moore testified he spoke to the residents of the apartment, who stated they had just returned

to the apartment after being absent for a week-long break to find the apartment had been broken

into. (1:03:48 - 50). The residents reported that a few large items, including a safe, had been stolen.

Officer Moore testified he entered the apartment to ensure that there was no one else present in the

apartment.  (1:03:50 – 1:04:24).  Officer Moore testified that the apartment at 112 Cornell Avenue

had three bedrooms; one bedroom was not occupied by either resident, but the residents used this

bedroom for storage. Inside of the bedroom had been a 12-gun safe bolted to the floor (1:04:50 –

1:05:10); Officer Moore observed that the carpet had indentations from where the safe had been,

and the carpet was lifted where the safe was apparently removed.  (1:05:10 - 1:05:24).

Officer Moore entered the apartment to find that the door of the bedroom that had been

used as storage was forcibly entered, and Officer Moore found a shoe print on the door.  Officer

Moore saw scuff marks along the walls where it appeared the safe had scraped against the wall.

(1:05:25 – 1:05:30). Similar marks and scratches were found on the handrail in the stairwell.

Gouge marks were located on the windowsill on the window next to the back door of the apartment,

which Officer Moore testified appeared to have been created by a prying tool.  (1:05:48).  Gouges

and slide marks were also present in the yard leading from the back door, around the side of the

house, and to the driveway in front of the residence. Officer Moore testified this appeared as though

the safe had been drug out of the back door and through the yard toward the driveway (1:05:50 –

1:06:16).

Officer Moore testified his next step after completing his search inside the apartment and

the area outside of the apartment was knocking on neighbors' doors to try and learn more

---

[2] All time references contained herein refer to an audio recording of the motion hearing held on August 16, 2019 found in FTR Gold.

information and inquire whether anyone had noticed anything suspicious. (1:06:28 – 1:07:05).  A neighbor stated that on or about November 25, 2018, between 1:00 AM and 2:00 AM, she saw two males with dark clothing carrying something large from the victims' residence to a U-Haul van. (1:07:15 – 1:08:00). The witness was unable to describe any physical characteristics of the individuals.

Officer Moore began searching for records of U-Haul rentals in the Morgantown area. (1:08:18 – 1:08:40). Upon showing the witness pictures of different styles of U-Haul vans, the witness claimed to have seen a Ford Transit van backed into the driveway at 112 Cornell Avenue (1:08:41 – 1:09:01). Officer Moore then contacted the regional U-Haul dealer and obtained a list of three different dealers who had rented a Ford Transit U-Haul van during the relevant time frame. (1:09:01 – 1:09:15).

Officer Moore recalled examining and investigating a tire track at the victims' residence from where the U-Haul had been backed in. Officer Moore found it likely to be a passenger, all-season type tire often associated with Ford Transit vans. (1:09:55 – 1:10:25). Officer Moore asked the witness neighbor how the U-Haul was positioned when she observed it and the witness stated it had been backed in. Based on this information, Officer Moore deduced that the suspect U-Haul van would have had mud on the rear passenger side tire. (1:10:26 – 1:10:44).

Officer Moore then drove around to each U-Haul dealer in Morgantown and examined all three of the Ford Transit vans. (1:10:46 – 1:10:58). After realizing the first two vans did not align with the evidence, Officer Moore discovered that the third van, a Ford Transit rented from Exit 1 U-Haul on Hornbeck Road, had mud about halfway up the side wall on the rear passenger side tire. (1:10:54 – 1:11:12). Officer Moore noticed that the mud found on the U-Haul van "matched the soil found on Cornell Ave." in Morgantown, which was yellow in color. (1:11:20 – 1:11:39).

Officer Moore spoke with the Manager of Exit 1 U-Haul and learned that when the renter returned the suspect U-Haul van, the renter was charged a cleaning fee because the van's interior was covered in mud. He informed Officer Moore the inside had been cleaned but the mud from the exterior had been untouched. (1:11:40 – 1:12:20). Officer Moore deduced that this information was consistent with the safe being dragged through the yard and loaded into the van.  (1:12:25 – 1:12:36).

Officer Moore then obtained the rental information of the Ford Transit van. The van had been rented by a DeRon Parrish and the address listed in the rental agreement by Mr. Parrish was 321 Brockway Avenue, Apartment B, in Morgantown, W.V. (1:12:38 – 1:12:50). When looking through the rental documents, Officer Moore noted the mileage on the odometer of the van and noted the van had travelled approximately 16 miles while rented by Mr. Parrish. (1:13:15 – 1:13:24). Officer Moore then used Google Maps to estimate how many miles would accumulate if the renter had picked up the U-Haul from Exit 1 U-Haul, drove to Cornell Ave., then to Brockway Ave. where the renter lived, and returned the van to Exit 1 U-Haul. Officer Moore found it was approximately the same distance, 16 miles. (1:13:24 – 1:13:52).

Officer Moore then went to 321 Brockway Avenue, Apartment B, in Morgantown, W.V. He observed a mailbox labeled "A. Parrish."  (1:14:00 – 1:14:40), The windows were blocked off and Officer Moore could not see anything in plain view. There was also yellow mud on the door of the residence (1:14:41 - 56). Officer Moore further detected the odor of raw marijuana coming from the apartment when he was near the door.  (1:14:54 – 1:15:08).

Officer Moore then obtained a search warrant for 321 Brockway Avenue. Officer Moore drafted the affidavit for the search warrant and signed it.  (1:15:10 – 1:15:35). Officer Moore testified that, because he was working night shift, it is common practice to allow officers to fill out

their warrant applications and leave them on the "sergeant's desk" at the department to be taken to the magistrate the next day by any officer going to magistrate court during business hours. (1:16:10 – 49). Officer Moore did not know the name of the officer that presented Officer Moore's signed affidavit and complaint for a search warrant to the state magistrate. (1:16:09 – 1:16:12). Officer Moore did not know if the officer that presented the affidavit and complaint to the magistrate provided the magistrate with any information outside of that contained in the affidavit and complaint drafted by Officer Moore. (1:16:38 – 48). Officer Moore testified that he believed he had probable cause to search the residence and, based upon the affidavit and complaint being signed by the state magistrate, believed the state magistrate agreed there was probable cause for issuing the warrant. (1:16:57 – 1:17:23). Officer Moore testified that, in retrospect, there was nothing he relied upon nor was there any information he wrote in the affidavit that was false. (1:17:32 – 50).

Next, Counsel for Defendant DeRon Parrish, Richard Walker, Assistant Federal Public Defender, conducted cross examination of Officer Moore. On cross examination, when asked how he was trained to draft affidavits and complaints for search warrants, Officer Moore testified that he was trained to provide only the "bare essentials" to establish probable cause because the state magistrates are "busy" and "do not have time to read" an entire report. (1:18:37 – 1:19:23). Officer Moore further testified he has been trained to "provide the elements of the crime", make sure the facts establish the statutory elements of the crime, and provide a list of items he is seeking to seize as evidence. (1:19:30 – 1:20:04). Officer Moore testified that when he personally takes an affidavit and complaint for a search warrant to a state magistrate, it is typical that the state magistrate places the officer under oath and will sign the warrant if he or she finds probable cause. (1:20:22 - 1:21:22).

Officer Moore testified that he did not know which officer presented his affidavit and complaint to the state magistrate. Officer Moore did not know which state magistrate had signed the affidavit and complaint. Officer Moore testified he had not spoken about the case with either the officer that brought the affidavit and complaint to the state magistrate or the state magistrate that signed the affidavit and complaint (1:21:23 – 1:21:42). Officer Moore did not know whether the officer provided any additional information to the state magistrate. Officer Moore did not know whether the state magistrate had any questions regarding the information contained in the affidavit and complaint for a search warrant. (1:21:42 – 1:22:03). When asked whether he knew if the state magistrate placed the officer under oath, Officer Moore testified that "the magistrate always puts us under oath before he signs anything." (1:22:01 – 1:22:24). Officer Moore testified this was the custom, but could not say affirmatively that the state magistrate, in fact, put the officer that presented his affidavit and complaint for a search warrant under oath that day. (1:22:35 – 1:22:48).

Counsel then proceeded to ask Officer Moore questions regarding his investigation. Regarding the mud Officer Moore located at the Defendants' residence at 321 Brockway Ave., in Morgantown, Officer Moore testified that he did not take pictures of the mud or attempt to collect a sample. (1:23:26 – 40). Officer Moore testified that he could not recall whether or not it had been raining in Morgantown at the time. (1:23:50 – 1:24:01). Officer Moore testified that he did not include any information regarding the mud in his affidavit and complaint for a search warrant. (1:24:12 – 1:24:20). Officer Moore further testified that he was trained to investigate burglaries at the West Virginia State Police Academy and the field training program at the Morgantown Police Department. (1:29:24 – 44).

Regarding Officer Moore's investigation into the Defendants' residence prior to the search warrant, Officer Moore testified he learned of the apartment through the rental documents

13

associated with the U-Haul van Officer Moore investigated in this case. (1:32:10 – 1:32:55). Officer Moore testified he believed a "Maryland driver's license" was submitted with the U-Haul rental agreement belonging to DeRon Parrish. However, Officer Moore could not recall what address was associated with the driver's license. (1:33-37 – 1:34:08). Officer Moore testified that he did not investigate the Maryland address and did not otherwise make an effort to verify that DeRon Parrish no longer lived at that Maryland address. (1:34:12 – 1:34:30). Officer Moore further testified that, prior to applying for the search warrant, he was able to determine that the Defendants, DeRon Parrish and Andre Parrish were brothers, but did not otherwise determine affirmatively that DeRon Parrish lived at the Morgantown address provided with the U-Haul rental agreement. (1:34:35 – 1:34:56). Officer Moore stated that he did not know with certainty that it was DeRon Parrish who was present at the time he rented the U-Haul. (1:34:58 – 1:35:32).

Officer Moore testified he used an in-house database of the Morgantown Police Department and found records of calls that had been made to 321 Brockway Avenue in Morgantown involving an Andre Parrish. (1:33:15). Officer Moore testified that he did not see DeRon Parrish outside of the residence at 321 Brockway Ave. in Morgantown, W.V. prior to obtaining the search warrant. (1:35:40 – 1:35:55). Officer Moore testified that he did not learn from any witness that the U-Haul van was seen at 321 Brockway Ave. in Morgantown. (1:36:01 – 1:36:17).

Next, Counsel for Defendant Andre Parrish, Charles Berry, Esq. cross examined Officer Moore. (1:36:58). When asked about the lack of detail and brevity of his affidavit, Officer Moore testified he could have included more information in his affidavit as the narrative in his police report was significantly longer. (1:43:20 – 1:43:56). Officer Moore testified that, after the initial search warrant that is the subject of Defendants' Motion to Suppress, he obtained a second search

14

warrant on November 28, 2018, for phones and electronic media belonging to DeRon Parrish. (1:45:37 - 46). This affidavit was longer, containing six full paragraphs, and was more particular than the first affidavit. (1:49:00 – 1:49:07).

Officer Moore testified that the search warrant was executed on the same day it was obtained, November 27, 2018. (1:56:04 – 16). Officer Moore testified that he, in conjunction with the Morgantown Police Department, the Mon Metro Drug Task Force, and the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), executed the search warrant for 321 Brockway Avenue (1:56:18 - 40). Officer Moore stated that, before applying for the search warrant, he searched the 321 Brockway Ave. address in his police database, and it was registered to Andre Parrish. (1:58:30 – 1:59:20). Officer Moore testified that he did not have any further information regarding Andre Parrish's involvement in the alleged crime, outside of knowing Andre and DeRon were brothers and the address listed in the U-Haul agreement for DeRon was also the address for Andre. (1:59:20 – 2:00:20).

On redirect examination by Assistant United States Attorney Andrew Cogar, Officer Moore testified that he obtained the search warrant less than three days after originally responding to the burglary report. (2:00:58 – 2:01:22). Officer Moore further testified that he obtained the subsequent search warrant for the phones on November 28, and explained that this search warrant was more detailed because he was "coached through" the search warrant by a detective with experience in federal cases and explained that it was necessary to contain more details in the subsequent warrant because cell phone evidence is easy to destroy. (2:01:30 – 2:02:56).

### III.  <u>CONTENTIONS OF THE PARTIES</u>

**A.  Defendants' Motion to Suppress**

In Defendants' Motion to Suppress *Physical Evidence* (ECF No. 32), Defendants first argue that the physical evidence "found in Mr. Parrish's home should be suppressed because the Affidavit was so bare that it lacked the necessary probable cause to support it." (ECF No. 32 at 5). Defendants argue that, due to the "terse nature" of the affidavit, comprising "just four lines of space", the affidavit "failed to convincingly link Mr. Parrish to the commission of the crime." Id. Defendants assert that Officer Moore's use of the phrase "I located the suspect van" in his affidavit is misleading to the reader. Id. Defendants argue the use of such a phrase "indicates to an ordinary and reasonable reader that the law enforcement officer located the same vehicle . . . which had been conclusively and positively identified through objective means." Id. The Defendants argue that such a conclusive and unconditional identification of the van as it appears stated in the affidavit had not occurred prior to Officer Moore seeking the search warrant. Id. at 5-6.

Importantly, the Defendants argue that, regardless of the investigation undertaken by Officer Moore, the officer did not recount his investigation or attempt to specify in his affidavit why the van was suspect. Defendants state that, rather than recounting his investigation, the officer stated he had "found the van, without any qualifications that actually existed about how the vehicle was identified." Id. at 7. Defendants argue that the use of this phrase "demonstrates a reckless disregard for the truth." Id.

Further, the Defendants argue that the affidavit again presents misleading information in that it states a witness saw "the suspects" leave the victims' apartment in a U-Haul van. Id. Defendants contend the use of the words "the suspects" could have led the Magistrate "to believe that Mr. Parrish was identified as the perpetrator of the crime." Id. Defendants state that, in fact, the witness had not been able to describe the individuals she saw "as anything but hooded." Id. Defendants again argue that this statement is "reckless and misleading." Id.

Second, Defendants argue that the "physical evidence should be suppressed because the Affidavit failed to give any reason at all to believe the stolen property was inside Mr. Parrish's home." Id. at 8. Defendants contend that the affidavit "contained no description of circumstances to indicate that the safe or its contents were actually at Mr. Parrish's home" and "neglected to explain any geographic relationship between Mr. Parrish's home and any criminal activity whatsoever." Id.

Finally, Defendants argue that the "physical evidence should be suppressed because the Leon good-faith exception cannot salvage a warrant, which is based on material falsehoods, which is "bare bones" and otherwise extremely flawed." Id. at 10. Defendants specifically argue that the good-faith exception does not apply for the following reasons:

> (1) the Affidavit contains at least one knowing or reckless falsity; (2) the terse and vague  nature of the Affidavit suggest that the magistrate was acting as a rubber stamp at the time the warrant was issued; (3) the Affidavit does not provide the magistrate with a substantial basis for determining probable cause either that Mr. Parrish committed the crime or that the safe was in Mr. Parrish's apartment; and (4) it was facially deficient.

(ECF No. 32 at 10).

### B.  Government's Response in Opposition

The Government's first response to Defendants' contentions is that the "warrant application established sufficient probable cause to search the defendants' residence." (ECF No. 37 at 5). The Government argues that Officer Moore's affidavit "is an accurate distillation of the critical facts to establish probable cause to search the defendants' residence." Id. The Government contends that Defendants' argument against Officer Moore's use of the phrasing "I located the suspect van" is a "post-hoc rationalization" that is concerned only with "what the officer could have written" as opposed to "the core issue of whether what actually was written established probable cause to search the defendants' residence." Id. at 6. The Government argues that the

17

"identification of the U-Haul van used in the burglary, was a 'reasonable conclusion' in light of Officer Moore's investigative findings and supported an inference that the renter of the van possessed evidence of the burglary." <u>Id</u>.

With respect to Defendants' argument regarding the accuracy and "veracity of Officer Moore's statement about identifying the van" and Defendants' claim that this statement "misled the magistrate", the Government argues that the Defendants have ignored the "other compelling facts connecting the van to the crime." The Government contends these facts include, "the location of the mud on the van, the timing of the van's rental, and the distance driven by the van." <u>Id</u>. The Government argues this evidence "informed Officer Moore's amply reasonable conclusion that he 'located the suspect van.'" <u>Id</u>. The Government further argues that the "magistrate's possible interpretations of the affidavit . . . are speculative and thus irrelevant." <u>Id</u>. at 7.

Next, the Government argues that by "timely connecting the instrumentality of the burglary to the defendant and his residence, the affidavit established probable cause to search that residence for not only the stolen property itself, but also evidence of the sale of the stolen property and tools used to commit the burglary." <u>Id</u>. The Government argues that the cases the Defendants rely upon for their assertion that the affidavit failed to establish a nexus between the place to be searched and the items to be seized are flawed because those cases "exclusively involved drug distribution, which is a qualitatively different type of crime than burglary." <u>Id</u>. at 8. The Government contends that "it was reasonable for a magistrate to infer that a tool used to commit the burglary would be kept in the defendants' home, along with evidence of the stolen items themselves or their resale." <u>Id</u>.

Finally, the Government argues that even if the warrant is deficient, "the disputed evidence should not be suppressed because Officer Moore relied on the warrant in good faith considering

the totality of the circumstances." Id. at 9. The Government asserts that Officer Moore's affidavit did not contain any false statements, was not "bare bones" as it was not "wholly conclusory", and the "probable cause standard does not require advance proof of the details of a crime." Id. at 10-11. Therefore, the Government argues, Officer Moore's reliance on the warrant was reasonable and the good faith exception applies. Id. at 11.

### C.  Defendants' Supplemental Brief

In the Defendants' Supplemental Brief in Support of the Motion to Suppress (ECF No. 46), Defendants' argue that the "search warrant was not supported by oath or affirmation." (ECF No. 46 at 5). Based upon Officer Moore's testimony at the motion hearing, the Defendants assert that there is "no evidence of an oath or affirmation" because Officer Moore "testified that he did not present the Affidavit and Complaint for the Search Warrant to a magistrate in Monongalia County." Id. at 6. The Defendants further argue that the magistrate "did not place Officer Moore under oath" and "Officer Moore did not swear to the contents of the Affidavit and Complaint." Id.

Further, while Officer Moore testified that another Officer with the Morgantown Police Department presented his Affidavit and Complaint for the Search Warrant to a magistrate, "Officer Moore could not testify about the identity of the other officer or, for that matter, about the identity of the magistrate." Id. The Defendants assert that the Government has not presented any evidence "that the second officer read the Affidavit and Complaint and Officer Moore could not confirm the second officer was sworn." Id.

### D.  Government's Supplemental Brief in Opposition

In the Government's Supplemental Brief in Opposition to Defendants' Motion to Suppress (ECF No. 50), the Government brought forth new information regarding Officer Moore's testimony at the motion hearing held on August 16, 2019. Following the motion hearing, the

Government states that it "spoke to Morgantown Police Department Lt. P.J. Scott and Det. Larry Hasley, who both advised that the procedure described by Officer Moore is not the standard protocol of the department." (ECF No. 50 at 2). The Government further states that Lt. Scott "advised that he specifically recalled seeing Officer Moore on the afternoon the warrant was signed, with the warrant in hand." Id. Furthermore, to this point, "Lt. Scott also reviewed Officer Moore's time sheets to confirm that Officer Moore worked afternoon shift on the day of the warrant's presentation, indicating that Officer Moore *presented the warrant himself.* Id. (emphasis added). According to the Government's Supplemental Brief, Lt. Scott further "located Officer Moore's call log and CAD records from November 27, 2018, (the day of the warrant's presentation), which both indicate that, at 2:04 PM, Officer Moore personally reported to Magistrate Court in Morgantown." Id. The Government attached Officer Moore's call log and CAD records from November 27, 2018 to its Supplemental Brief as Exhibits A & B. Id.

The warrant at dispute in this motion to suppress was "executed less than 1 ½ hour" after Officer Moore reported to Magistrate Court in Morgantown. Id. The Government asserts that this "*information reflects that Officer Moore mistakenly believed that another officer presented the warrant affidavit and application.*" Id. (emphasis added).

The Government further contends that it "has determined that Monongalia County Magistrate Darris Summers executed the warrant." Id. The Government states that "Lt. Hasley identified Magistrate Summers as the signee on the warrant" and, to corroborate this, the Government submitted a comparison of the signature on the warrant with State magistrate Summers' "signature on his 2016 magistrate candidacy form." Id. at 2-3.

Based upon this new information, the Government argues that the Defendants "cannot establish that the warrant at issue contravened the Fourth Amendment because it was sworn before

a magistrate, supported by probable cause, and executed in good faith." <u>Id.</u> at 3. The Government contends that the Defendants' do not meet their burden of establishing that the warrant at dispute violated their Fourth Amendment rights by "asserting general complaints about police practices and speculative claims about what *might* have occurred during the presentation of the warrant." <u>Id.</u> The Government argues that the new information presented "indicates that Officer Moore in fact presented the warrant at issue" and, even if another officer had done so, "the warrant would still comply with Fourth Amendment precedent allowing law enforcement action based on the 'collective knowledge' of fellow officers." <u>Id.</u> at 4.

The Government further argues that any nonconformity to warrant procedures here would constitute a "technical irregularity" as opposed to a "constitutional infirmity." <u>Id.</u> When a situation presents a technical irregularity, the government argues the Defendants must demonstrate "prejudice or bad faith" for the suppression of evidence to be proper. <u>Id.</u> The Government contends that any irregularity in the application for the search warrant at issue here did not stem from "bad faith" nor did it impact the magistrate's "execution of the warrant." <u>Id.</u> at 5.

## E. Defendants' Objections to the Undersigned's Order Scheduling a Supplemental Motion Hearing.

Following receipt of both parties' Supplemental Briefs, the undersigned's law clerk sent an email to the attorneys of record addressing a "supplemental hearing to clarify Officer Moore's testimony on the record and allow both parties an opportunity to question Officer Moore with regard to the new documents." (*See* ECF No. 52-1). The undersigned noted the Government's presentation of new documents suggesting Officer Moore was mistaken in his testimony at the motion hearing on August 16, 2019, and, in fact, Officer Moore himself had presented the application and affidavit for a search warrant to the state magistrate in this case.

21

After the undersigned's law clerk submitted an email to all attorneys of record, counsel in this matter did not indicate any objection to holding a supplemental hearing and counsel for the Defendant, Richard Walker, Assistant Federal Public Defender, responded that he "may issue some subpoenas" and asked, "for a hearing during the week of Sept. 15." (*See* Attachment A to this Report and Recommendation). The undersigned, therefore, entered an order scheduling the supplemental motion hearing for Friday, September 27, 2019. (ECF No. 51).

On September 16, 2019, Counsel for Defendant DeRon Parrish, Richard Walker, submitted Objections to the scheduling of the supplemental hearing. (ECF No. 52). Defendant argued that the undersigned's scheduling of a supplemental hearing rose to the level of "an abuse of discretion." (ECF No. 52 at 4). Defendant argued that, because "the government did not move for a second hearing on the motion to suppress" and the undersigned had "scheduled the second hearing on the suppression motion on its own", a supplemental hearing was inappropriate because it would "reopen" the motion to suppress and allow the government a "second bite at the apple." (ECF No. 52 at 7-8). The Defendant further argued that the information the Government submitted in its Supplemental Brief was available to the Government prior to the original motion hearing held on August 16, 2019, and the Government did not proffer a reason why the information was not introduced at the initial hearing. Id. The Defendant further filed a Motion for Issuance of Rule 17 Subpoena Duces Tecum (ECF No. 53) in the event that the undersigned held the supplemental hearing over the Defendants' Objections.

The undersigned directed the Government to respond to Defendants' Objections and the Government submitted its Response (ECF No. 55) on September 19, 2019. Upon consideration of the arguments of both parties, the undersigned entered a paperless order (ECF No. 56) on September 23, 2019, granting the Defendants' Objections, cancelling the supplemental motion

hearing, and denying the Defendants' Motion for Issuance of Rule 17 Subpoena Duces Tecum as moot. The undersigned finds that the information the Government presented in its Supplemental Brief was available to it prior to the initial hearing and should have been presented at that time. Further, the undersigned finds that clarification of Officer Moore's testimony on the issue of whether he or another officer had presented his affidavit and complaint for a search warrant in this matter would not be outcome determinative.

Accordingly, the undersigned's analysis in this Report and Recommendation must proceed based upon the sworn testimony of Officer Moore as it was presented on the record during the August 16, 2019 motion hearing. The documents presented by the Government are certainly indicative that Officer Moore himself presented his affidavit and complaint for a search warrant to the state magistrate and his testimony at the motion hearing may well have been mistaken. Indeed, Officer Moore's narrative of the facts in this case found in his police report (ECF No. 32-2, at 9), states "[o]n 11/27/2018, I obtained a search warrant for Parrish's apartment." However, the undersigned finds no legitimate reason or benefit by Officer Moore omitting the fact that he presented the affidavit and complaint for a search warrant to the state magistrate himself. As such, absent testimony of Officer Moore affirming the same, the undersigned must find Officer Moore's sworn testimony at the motion hearing the more reliable and credible evidence.

## IV.   LEGAL ANALYSIS

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This constitutional protection is realized through the requirement that a "neutral and detached magistrate" find probable cause to support a warrant. Illinois v. Gates, 462 U.S. 213, 240 (1983).

"The evaluation of whether a search warrant is supported by probable cause turns first on whether the items to be seized are evidence of criminal activity, *see* Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978), and second, on 'whether it is reasonable to believe that the items to be seized will be found in the place to be searched.'" United States v. Wienke, 733 Fed. Appx. 65, 69 (4th Cir. 2018) (unpublished) (per curiam) (citing United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993); United States v. Church, 823 F.3d 351, 355 (6th Cir. 2017)). In undertaking this analysis, Courts utilize a totality-of-the-circumstances approach that is "grounded in the commonsense recognition that 'affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation' and officers in the field rely upon their training and experience to draw reasonable inferences from the evidence." Wienke, 733 Fed. Appx. at 69 (quoting Gates, 462 U.S. at 235 (internal quotation marks omitted); United States v. Johnson, 599 F.3d 339, 346 (4th Cir. 2010) (noting an officer can draw on his experience to make inferences and determine whether probable cause exists)). Therefore, Courts have determined that a "magistrate must consequently 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Wienke, 733 Fed. Appx. at 69 (quoting Gates, 432 U.S. at 238).

When the sufficiency of a search warrant and its supporting affidavit is challenged, the standard of review is *de novo*. United States v. Zenone, No. 97-4179, No. 97-4190, 1998 U.S. App. LEXIS 18561, at *11 (4th Cir. August 10, 1998) (citing United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1989); *see also* United States v. Hodges, 705 F.2d 106 (4th Cir. 1983). In conducting such review, "great deference is to be given to a magistrate's assessment of facts when making a determination of probable cause." Zenone, 1998 U.S. App. LEXIS 18561, at *12 (citing United

States v. Jones, 31 F.3d 1304, 1313 (4th Cir. 1994). As such, the Court must determine whether a "substantial basis" exists for the state magistrate's decision. *See* United States v. Hodges, 705 F.2d 106, 108 (4th Cir. 1983) (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)).

### A. Officer Moore's affidavit for the search warrant was sufficient to support the State magistrate's determination of probable cause.

With regard to the underlying investigation undertaken by Officer Moore, the undersigned finds Officer Moore's testimony at the motion hearing held on August 16, 2019, to be credible. Here, the language presented in Officer Moore's Affidavit and Complaint for Search Warrant (ECF No. 32-1) consisted of the following:

> On 11/25/2018, the victim called 911 for a burglary report. I responded and discovered that the victim's residence had been forceably [sic] entered and several items stolen, including a 12 gun safe containing two shotguns and $1500 cash. A witness stated that she had seen the suspects in a U-Haul van. I located the suspect van which had been rented to a "DeRon Parrish" at 321 Brockway Avenue, Apartment B, at the time of the incident.

(ECF No. 32-1). Although brief, the undersigned is of the opinion that Officer Moore's affidavit is an accurate recitation and summary of the facts of Officer Moore's underlying investigation. Further, the undersigned finds that the facts presented in Officer Moore's affidavit are sufficient to establish a "substantial basis" for the state magistrate finding probable cause to issue the search warrant for the Defendants' residence in this case. Each step of Officer Moore's investigation fully supports each line of Officer Moore's affidavit. The witness stated she saw a U-Haul van and two individuals loading a large object into the U-Haul van. This evidence established that a U-Haul van was used in the robbery. Officer Moore subsequently contacted all U-Haul rental services in the Morgantown area and obtained records of U-Haul vans rented within the time frame that the robbery occurred. Officer Moore visited all three offices that had rented out U-Haul vans in Morgantown during the relevant time frame. Based upon evidence aptly gathered at the crime

scene, Officer Moore deduced that the van would have likely been covered in mud. Only one of the vans rented in the relevant time frame was returned with mud on both the outside of the van and the inside of the van.

The location of the mud on the van aligned with the tire track found in the victims' yard. The mud on the interior of the van was indicative of a large object having been stored in the van after being drug through mud. This evidence matched the impressions in the yard observed by Officer Moore indicating a large object, likely the missing gun safe, had been drug through the yard. While this information was omitted from Officer Moore's affidavit, it supports the reasonable inference stated in Officer Moore's affidavit that he had "located the suspect van." The van was rented to a "DeRon Parrish" and the rental agreement contained an address associated with Mr. Parrish at 321 Brockway Ave. in Morgantown, W.V. The proximity in time of the robbery's occurrence to the rental of the suspect U-Haul van and Officer Moore locating the van, support the reasonable inference that the stolen gun safe would likely be found at Parrish's apartment. Accordingly, the undersigned finds probable cause existed and there was a "substantial basis" for the state magistrate to issue the search warrant.

1.  **The affidavit sufficiently established a nexus between the evidence of the crime to be seized and the Defendants' residence.**

For purposes of satisfying the second prong of the probable cause inquiry, "an affiant must show a sufficient 'nexus between the place to be searched and the items to be seized.'" Wienke, 733 Fed. Appx. at 69 (quoting United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988). The existence of a sufficient nexus "turns on 'the nature of the items and the *normal inferences* of where one would likely keep such evidence.'" Id. (emphasis added).

It is well settled that "officers may draw conclusions from their experience, judgment, and observations when identifying the place to be searched." Wienke, 733 Fed. Appx. at 69-70 (citing

United States v. Lyons, 740 F.3d 702, 723-24 (1st Cir. 2014) (holding that an officer's training-and-experience statement, coupled with other observations, sufficiently established a nexus between money and illegal betting records and the defendant's residence); United States v. Vanderweele, 545 Fed. Appx. 465, 469 (6th Cir. 2013) (holding that an officer's training and experience statement that firearms and "related items are commonly stored" in the owner's residence established a sufficient nexus). Accordingly, the "magistrate may draw a reasonable inference from the facts stated if the affiant does not assert facts 'directly linking the items sought to the defendant's residence.'" Wienke, 733 Fed. Appx. at 70 (quoting United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005) (internal quotation marks omitted)).

The "normal inferences test" of the nexus analysis articulated above begins with "the general rule that 'it is reasonable . . . to assume that a person keeps his possessions where he resides.'" Wienke, 733 Fed. Appx. at 70 (quoting Peffer v. Stephens, 880 F.3d 256, 270 (6th Cir. 2018)). In illustrating the "normal inferences test", the Fourth Circuit in Wienke provided, "[f]or example, 'the use of a gun in the commission of a crime is sufficient to establish a nexus between the suspected criminal's gun and his residence' because guns are generally kept in the home." Wienke, 733 Fed. Appx. at 70 (quoting Peffer, 880 F.3d at 272; Anderson, 851 F.2d at 729 (finding that it is reasonable "to believe that the defendant's gun and silencer would be found in his residence")).

Here, as articulated and detailed fully above in Section IV A, the investigation undertaken by Officer Moore and the facts submitted in his affidavit clearly and logically lead one to believe evidence of the robbery would be located within the Defendants' residence at 321 Brockway Ave., in Morgantown, W.V. The primary evidence missing from the victims' residence as a result of the robbery was a large gun safe containing three shotguns. The safe was transported from the victims'

residence using a U-Haul van.  A normal and reasonable inference to be drawn from these facts is that the gun safe would be located at the residence listed by Defendant DeRon Parrish in his rental agreement of the suspect U-Haul van. Such evidence is of the type that would commonly be stored in one's residence and, furthermore, the proximity in time between the robbery, the rental of the U-Haul, Officer Moore's identification of the U-Haul, and Officer Moore's application for a search warrant would lead one logically to believe evidence of the robbery would still be located in the Defendants' residence. Accordingly, the undersigned finds Officer Moore's affidavit established a sufficient nexus between the evidence to be seized and the area to be searched.

**B.  The <u>Leon</u> good faith exception applies, and the evidence seized should not be suppressed based on any technical deficiency.**

The case of <u>United States v. Leon</u>, 468 U.S. 897 (1984) established the "good faith" exception to the Fourth Amendment. <u>Leon</u> "teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" <u>United States v. Bynum</u>, 293 F.3d 192 (4th Cir. 2002) (quoting <u>Leon</u>, 468 U.S. at 922 n.23). "Typically, 'a warrant issued by a magistrate . . . suffices to establish that a law enforcement officer has acted in good faith in conducting the search' and thus searches executed 'pursuant to a warrant will rarely require any deep inquiry into reasonableness.'" <u>United States v. Andrews</u>, 577 F.3d 231, at 236 (quoting <u>Leon,</u> 468 U.S. at 922). However, the United States Supreme Court explained in <u>Leon</u> that an officer "could not be found to have acted with 'objective reasonableness,' precluding application of the good faith exception, in the following four circumstances:

> (1) 'the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;

> (2) the magistrate acted as a rubber stamp for the officers and so wholly abandoned his detached and neutral judicial role;
>
> (3) an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4) a warrant [is] so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid.'"

Bynum, 293 F.3d at 7 (quoting Leon, 468 U.S. at 923).

Defendants argue that the "physical evidence should be suppressed because the Leon good-faith exception cannot salvage a warrant, which is based on material falsehoods, which is 'bare bones' and otherwise extremely flawed." (ECF No. 32 at 10). Defendants specifically argue that the good-faith exception does not apply for the following reasons:

> (1) the Affidavit contains at least one knowing or reckless falsity; (2) the terse and vague  nature of the Affidavit suggest that the magistrate was acting as a rubber stamp at the time the warrant was issued; (3) the Affidavit does not provide the magistrate with a substantial basis for determining probable cause either that Mr. Parrish committed the crime or that the safe was in Mr. Parrish's apartment; and (4) it was facially deficient.

(ECF No. 32 at 10).

As stated more fully above, the undersigned has found Officer Moore's affidavit was sufficient to establish probable cause and the state magistrate had a substantial basis for finding probable cause and issuing the search warrant. As a result, the undersigned finds that Defendants' third and fourth arguments are without merit and the third and fourth circumstances that preclude the application of the good faith exception under Leon do not apply here.

1. **The State magistrate did not act as a "rubber stamp" and did not wholly abandon his detached and neutral role as condemned by the United States Supreme Court in Lo-Ji Sales, Inc. v. New York.**

Defendants' second argument against application of the good faith exception is "the terse and vague nature of the Affidavit suggest the magistrate was acting as a rubber stamp at the time the warrant was issued." (ECF No. 32 at 10). In other words, Defendants seek application of the second circumstance articulated by the Court that precludes application of the good faith exception under Leon, that being "the magistrate acted as a rubber stamp and so wholly abandoned his detached and neutral role." Bynum, 293 F.3d at 7 (quoting Leon, 468 U.S. at 923). In Leon, "the Court stated that when a magistrate abandons his neutral role 'in the manner condemned in Lo-Ji Sales, Inc. v. New York' then the good faith exception should not apply." United States v. Oldaker, No. 2:11CR33, 2012 U.S. Dist. LEXIS 25788, at *15 (N.D.W. Va. Feb. 16, 2012) (quoting Leon, 468 U.S. at 923)).

Here, the Defendants have not presented any evidence that the state magistrate in this case "wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)." In the case of Lo-Ji Sales, an officer sought "a warrant to search an adult bookstore and presented a Town Justice with two allegedly obscene films along with an affidavit indicating that 'similar' films were present in the bookstore." Oldaker, 2012 U.S. Dist. LEXIS 25788, at *15 (citing Lo-Ji Sales, 442 U.S. at 321). Upon reviewing the two films, "the Town Justice issued a warrant authorizing a search of the bookstore for items determined to be possessed in violation of law." Oldaker, 2012 U.S. Dist. LEXIS 25788, at *15 (citing Lo-Ji Sales, 442 U.S. at 321-22). The search warrant in Lo-Ji Sales "did not list those items; instead, the Town Justice accompanied law enforcement officers on a search of the bookstore, examined the materials therein to assess their obscenity, then authorized the seizure" of items the Town Justice deemed obscene. Oldaker, 2012 U.S. Dist. LEXIS 25788, at *16 (citing Lo-Ji Sales, 442 U.S. at 326-27).

The United States Supreme Court in <u>Lo-Ji Sales</u> criticized the issuance of an "open-ended"

warrant" and stated the following in regard to the actions of the Town Justice:

> He allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. Once in the store, he conducted a generalized search under authority of an invalid warrant; he was not acting as a judicial officer but as an adjunct law enforcement officer. When he ordered an item seized because he believed it was obscene, he instructed the police officers to seize all "similar" items as well, leaving determination of what was "similar" to the officer's discretion. Indeed, he yielded to the State Police even the completion of the general provision of the warrant. Though it would not have validated the warrant in any event, the Town Justice admitted at the hearing to suppress evidence that he could not verify that the inventory prepared by the police and presented to him late that evening accurately reflected what he had ordered seized.

<u>Oldaker</u>, 2012 U.S. Dist. LEXIS 25788, at *17 (quoting <u>Lo-Ji Sales</u>, 442 U.S. at 327). The United

States Court of Appeals for the Fourth Circuit in <u>U.S. v. Doyle</u> held the following, with application

to the present case,

> Doyle does not contend that the state magistrate issued an open-ended warrant or executed the search alongside law enforcement officer as did the Town Justice in <u>Lo-Ji Sales</u>. And while this Court has held that a magistrate abandons his judicial role when issuing a warrant based on a "bare bones affidavit," <u>United States v. Wilhelm</u>, 80 F.3d 116 (4th Cir. 1996), if a magistrate issues a warrant on the basis of nonconclusory statements that nonetheless fail to establish probable cause, the reasonableness of the officer's execution of the warrant is better analyzed under the third circumstance discussed in <u>Leon</u>, which we address below. *See* <u>United States v Andrews,</u> 577 F.3d 231, at 240 (4th Cir. 2009) (stating that a "rubber stamp" challenge to judicial neutrality "[e]ssentially . . . recasts Andrews' argument that no officer could reasonably rely on the warrant because there was an insufficient basis for a probable cause finding"); *see also* <u>United States v. Sager</u>, 743 F.2d 1261 (8th Cir. 1984) (rejecting rubber stamp challenge to neutrality as "only another way of phrasing the argument that no one who relied upon the affidavit could have been objectively reasonable."). Accordingly, we are reluctant to conclude that the state magistrate so abandoned his judicial role as to require a departure from the <u>Leon</u> good faith exception.

<u>Oldaker</u>, 2012 U.S. Dist. LEXIS 25788, at *17-18 (quoting <u>U.S. v. Doyle</u>, 650 F.3d 460, at 470

(4th Cir. 2011). Here, the undersigned finds similarly that Defendant has presented no evidence

indicating the State magistrate in this case acted in a manner comparable to the Town Justice in

<u>Lo-Ji Sales</u>. As such, the undersigned finds that the State magistrate here has not "wholly abandoned his judicial role as to require departure from the <u>Leon</u> good faith exception." Accordingly, the undersigned will next address Defendants' first argument, that the "Affidavit contains at least one knowing or reckless falsity" and is "bare bones."

2.  **The affidavit is not bare bones and the statements contained within the affidavit do not demonstrate a reckless disregard for the truth nor are the statements misleading.**

The undersigned finds that the affidavit and complaint for a search warrant drafted by Officer Moore was not bare bones and sufficiently set forth an accurate recitation of the facts giving rise to probable cause to search the Defendants' residence for evidence of the robbery.

While Defendants argue that one could potentially interpret the use of the word "suspect" to be misleading, the undersigned finds it was not used intentionally to mislead the state magistrate nor to distort the facts in a favorable manner. "Suspect" and "suspects" are generic terms used by law enforcement officers to refer to unknown individuals and items that are the subject of an investigation. A fair reading of the affidavit would clearly suggest that the "suspects" and the "suspect van" were unknown at the time of the investigation. Such an interpretation is clear because, had Officer Moore wished to suggest the Defendants were positively identified by the witness he could have said so and referred to them by name as opposed to "suspects."

Further, Officer Moore's affidavit accurately relays a summary of the investigation he undertook giving rise to probable cause for searching the Defendants' residence. Officer Moore investigated a burglary report, found the residence had been forcibly entered, and found a large safe containing guns and cash was missing and had been drug from the residence. Officer Moore interviewed a neighbor who witnessed two individuals loading a large object into a U-Haul van at the victims' residence during the time frame in which the robbery likely occurred. Finally, Officer

Moore conducted an extensive investigation, employing several concise and logical steps detailed fully herein leading to Officer Moore ultimately identifying the "suspect van". As such, the undersigned finds no evidence that Officer Moore's affidavit contains any "knowing or reckless falsity."

Under the totality of these circumstances and given the close proximity in time which the robbery occurred to Officer Moore locating the suspect U-Haul van, it was reasonable for both the state magistrate and Officer Moore to draw the inference that evidence of the robbery would be found in the residence provided in the rental agreement for the suspect U-Haul. Accordingly, the undersigned finds that the Defendants' first argument is without merit. Last, the undersigned will address the argument presented by the Defendants in their Supplemental Brief (ECF No. 46), that the "search warrant was not supported by oath or affirmation." (ECF No. 46 at 5).

3. **The <u>Leon</u> good faith exception applies to cases where the oath or affirmation was defective and any defect in the oath or affirmation here is a mere technical deficiency as opposed to a constitutional infirmity. The evidence seized in this matter should not be suppressed based upon any technical deficiency in the oath or affirmation.**

Based upon Officer Moore's testimony at the motion hearing, the Defendants assert that there is "no evidence of an oath or affirmation" because Officer Moore "testified that he did not present the Affidavit and Complaint for the Search Warrant to a magistrate in Monongalia County." (ECF No. 46 at 6). The Defendants further argue that the magistrate "did not place Officer Moore under oath" and "Officer Moore did not swear to the contents of the Affidavit and Complaint." <u>Id.</u> Further, while Officer Moore testified that another Officer with the Morgantown Police Department presented his Affidavit and Complaint for the Search Warrant to a state magistrate, "Officer Moore could not testify about the identity of the other officer or, for that matter, about the identity of the magistrate." <u>Id.</u> The Defendants assert that the Government has

not presented any evidence "that the second officer read the Affidavit and Complaint and Officer Moore could not confirm the second officer was sworn." Id.

Here, as stated above, Officer Moore's testimony at the hearing on the motion to suppress held on August 16, 2019, was that another officer presented Officer Moore's affidavit and complaint for a search warrant to the state magistrate. "The Warrant Clause does not require a signed and sworn affidavit, but only that probable cause be supported by oath or affirmation." United States v. Gomez, No. 1:17CR71, 2018 U.S. Dist. LEXIS 88989, at *17 (N.D.W. Va. May 29, 2018) (quoting United States v. Henry, 931 F.Supp. 45 (S.D.W. Va. 1996) (internal citations omitted); See United States v. Loy, 569 F.Supp. 2d 601, at 606 (N.D.W. Va. 2008) (finding sufficient that a detective "affirmed under oath . . . that the information presented in the application for the search warrant was true based upon his knowledge and belief"). Honorable United States District Judge Irene M. Keeley addressed a similar issue in Gomez wherein the case of United States v. Jones, 471 F.3d 858 (8th Cir. 2006) was cited.

The Court summarized the Jones case from the Eighth Circuit as follows:

> There, "Kansas City, Missouri Police Department ("KCPD") Detective Robert Delameter obtained a warrant" to search a particular house. He "presented under oath a supporting affidavit prepared by an undercover KCPD detective." Id. at 870. The defendant later argued that the affidavit was defective because "the affiant, KCPD Detective Delameter, had no personal knowledge of, and did not attempt to verify, the facts contained in the affidavit." Id. at 873. Instead, as was common practice in the KCPD, the "undercover detective collected the information, prepared the affidavit and passed it to Detective Delameter for presentation to a judge." Id. at 873-74.

Gomez, 2018 U.S. Dist. LEXIS 88989, at *17-18 (citing Jones, 471 F.3d 868). In Jones, the Eighth Circuit ultimately concluded "that 'nothing' about such an arrangement even 'suggest[ed] a faulty oath or defective warrant.' Rather, 'where a detective other than the affiant is the source of the

information in the affidavit, the other detective is the functional equivalent of a reliable informant.'" Id. (quoting Jones, 471 F.3d, at 874 (internal citations omitted)).

Similarly, here, another officer adopted the facts and investigation undertaken by Officer Moore, who drafted the affidavit and complaint for the search warrant in this matter. As such, Officer Moore in this case was the functional equivalent of a reliable informant for the officer that presented Officer Moore's affidavit and complaint for a search warrant to the state magistrate.

Further, the affidavit and complaint for a search warrant in this matter clearly shows the affidavit was "[t]aken, subscribed **and sworn to before me**, this 27 day of November 2018" followed by the signature of a state magistrate. (ECF No. 32-1 at 1-2). Such evidence clearly indicates an oath and affirmation was administered. Defendants have not suggested or presented any credible evidence to suggest the magistrate's signature was forged, obtained by fraud, or any other method that would suggest bad faith on the part of the Morgantown Police Department.

Lastly, even "if there had been a Fourth Amendment violation, Courts routinely apply the good-faith exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897 (1984) in cases where a warrant issued in violation of the oath or affirmation requirement of the Fourth Amendment." United States v. Beard, No. 5:13-CR-22-R, 2013 U.S. Dist. LEXIS 184373, at *16-17 (W.D. Ky. Dec. 20, 2013).

The good-faith exception is applied in such cases because "the exclusionary rule was intended to deter police misconduct rather than punish judicial error." Beard, 2013 U.S. Dist. LEXIS 184373, at *17. *See* Leon, 468 U.S. at 916 (purpose of exclusionary rule is to deter police misconduct rather than punish judicial error); *See also* Mass v. Sheppard, 468 U.S. 981, at 990 (1984) (where judge, not a police officer, makes a mistake that leads to a Fourth Amendment violation, the exclusionary rule should not be applied); United States v. Gordon, 1995 U.S. App.

LEXIS 5318, at *11-12 (6th Cir. 1995) (relying on <u>Leon</u> and refusing to suppress contraband seized by police where the warrant that the defendant was arrested on was based on an unsworn and deficient affidavit, stating "[t]he exclusionary rule should be limited to those situations where its remedial objectives are best served, i.e., to deter illegal police conduct rather than the errors of judges, magistrates and their staff."); <u>United States v. Hessman</u>, 369 F.3d 1016, 1022-23 (8th Cir. 2004) (finding that law enforcement officers' reliance on an unsworn and unsigned search warrant was not objectively unreasonable); <u>United States v. Callwood</u>, 66 F.3d 1110, 1113 (10th Cir. 1995) (ruling the exclusion of evidence is not "the appropriate remedy" for the issuing state magistrate's failure to administer an oath to an officer); <u>United States v. Moore</u>, 968 F.2d 216, 223 (2d Cir. 1992) (holding "the lack of an oath or affirmation by the presiding officer did not destroy the warrant's final validity"); <u>United States v. Richardson</u>, 943 F.2d 547, 548 550-51 (5th Cir. 1991) (reversing the district court's decision to suppress where law enforcement officer had not signed the affidavit and the state magistrate did not require an oath or affirmation of the facts in the affidavit).

The undersigned finds that Officer Moore did not act in bad faith nor did he or the Morgantown Police Department commit any misconduct or act in a manner that was illegal. Rather, any deficiency in the oath or affirmation process here would have been the result of judicial error of the issuing state magistrate and amounts to no more than a technical deficiency. As such, the undersigned finds that the remedial objectives of the exclusionary rule are not best served here as there is no police misconduct to deter and the exclusion of evidence is not an appropriate remedy on this set of facts. Accordingly, the undersigned finds that Defendants' arguments are without merit and the undersigned **RECOMMENDS** Honorable United States District Judge Thomas S. Kleeh **DENY** Defendants' Motion to Suppress *Physical Evidence* (ECF No. 32).

## V.    CONCLUSION

Accordingly, for the reasons stated herein, the undersigned **RECOMMENDS** Defendants'

Motion to Suppress *Physical Evidence* (ECF No. 32) be **DENIED**.

Any party shall, within four (4) days[3] after being served with a copy of this Report and

Recommendation, **on or before Friday, October 4, 2019**, file with the Clerk of the Court **specific**

**written objections identifying the portions of the Report and Recommendation to which**

**objection is made, and the basis for such objection.**  A copy of such objections should also be

submitted to the Honorable Thomas S. Kleeh, United States District Judge. Objections shall not

exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless

accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set**

**forth above shall constitute a waiver of de novo review by the District Court and a waiver of**

**appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir.

1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);

United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report

and  Recommendation to any parties who appear *pro se* and all counsel of record, as provided in

the Administrative Procedures for Electronic Case Filing in the United States District Court for

the Northern District of West Virginia.

---

[3] "Although parties are typically given fourteen days to respond to a Report and Recommendation, see 28 U.S.C. § 636(b)(1), this allowance is a maximum, not a minimum, time to respond, and the Court may require a response within a shorter period if exigencies of the calendar require. United States v. Barney, 568 F.2d 134, 136 (9th Cir.1978)." United States v. McDaniel, 1:16-CR-52 (ECF No. 32 at 14-15, at footnote). See also United States v. Cunningham, 2011 WL 4808176, at Footnote 1 (N.D. W. Va., Oct. 6, 2011) and United States v. Mason, 2011 WL 128566, at Footnote 7 (N.D. W.Va., Jan. 7, 2011). In this case, the final pretrial conference is set before the Honorable District Judge Thomas S. Kleeh on October 15, 2019 and Jury Selection and Trial is set for October 21, 2019.  The resulting calendar exigency thus warrants shortening the period with which to file objections to the Report and Recommendation from fourteen (14) days to four (4) days.

Respectfully submitted on Monday, September 30, 2019.


MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT A

| | |
|---|---|
| **From:** | Cory Lowe |
| **To:** | Richard Walker; andy.cogar_usdoj.gov; cberrylaw |
| **Cc:** | Beth Gross |
| **Subject:** | RE: Parrish - 1:19-CR-30 - Motion to Suppress - Supplemental Hearing |
| **Date:** | Friday, September 6, 2019 12:25:00 PM |

Mr. Walker,

I understand. For the week of September 15th, Judge Aloi is available to do the hearing in the afternoon of Monday, Sept. 16th; any time on Tuesday, Sept. 17th and Wednesday, Sept. 18th; and in the afternoon of Thursday, Sept. 19th.

Thank you,


Cory Lowe
Law Clerk to United States Magistrate Judge Michael John Aloi
United States District Court
Northern District of West Virginia
304-637-2239
cory_lowe@wvnd.uscourts.gov



**From:** Richard Walker <Richard_Walker@fd.org>
**Sent:** Friday, September 6, 2019 12:07 PM
**To:** Cory Lowe <Cory_Lowe@wvnd.uscourts.gov>; andy.cogar_usdoj.gov <Andy.Cogar@usdoj.gov>; cberrylaw <"cberrylaw@hotmail.com" <cberrylaw@hotmail.com>
**Cc:** Beth Gross <Beth_Gross@fd.org>
**Subject:** RE: Parrish - 1:19-CR-30 - Motion to Suppress - Supplemental Hearing

Cory,

I am going to need some lead time on this.  I may issue some subpoenas myself if we are going to re-do the hearing.  I'd ask for a hearing during the week of Sept. 15.  I am wide open that week.

Thanks.

Richard



**From:** Cory Lowe <Cory_Lowe@wvnd.uscourts.gov>
**Sent:** Friday, September 6, 2019 11:39 AM
**To:** andy.cogar_usdoj.gov <Andy.Cogar@usdoj.gov>; Richard Walker <Richard_Walker@fd.org>; cberrylaw <"cberrylaw@hotmail.com" <cberrylaw@hotmail.com>

**Subject:** Parrish - 1:19-CR-30 - Motion to Suppress - Supplemental Hearing

All,

In light of the new information presented in the Government's Supplemental Brief in Opposition to the Defendants' Motion to Suppress, Judge Aloi would like the benefit of having a supplemental hearing to clarify Officer Moore's testimony on the record and allow both parties an opportunity to question Officer Moore with regard to the new documents. The Government's Supplemental Brief brings to light new information concerning Officer Moore's testimony on two issues: (1) That presentment of an Affidavit and Complaint for a search warrant by an Officer other than the one who drafted the affidavit and conducted the underlying investigation is <u>not</u> standard protocol; and (2) That Officer Moore himself presented the Affidavit and Complaint for a search warrant to the Magistrate Judge, rather than another officer as Officer Moore testified at the motion hearing. The new documents and information in the Government's Supplemental Brief is suggestive that Officer Moore's original testimony may have been mistaken.

We would like to have this hearing as soon as possible and as early as next week. Further, if possible, we would like for the Government to present both Officer Moore and Lt. P.J. Scott, the Officer who advised that the procedure Officer Moore described at the original motion hearing is not standard protocol and further located and reviewed Officer Moore's time sheets for the day the search warrant was presented.

Please advise as to your availability next week for this hearing and if it will be possible to present these witnesses.

Thank you,

Cory Lowe
Law Clerk to United States Magistrate Judge Michael John Aloi
United States District Court
Northern District of West Virginia
304-637-2239
cory_lowe@wvnd.uscourts.gov