# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                               Crim. Action No. 1:19-CR-30
                                                                         (Kleeh)

**DERON PARRISH and**
**ANDRE PARRISH,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

Pending before the Court is a Report and Recommendation ("R&R") by United States Magistrate Judge Michael J. Aloi. Judge Aloi recommends that the Court deny the Motion to Suppress Physical Evidence filed by Defendant DeRon Parrish and joined by Defendant Andre Parrish (together, "Defendants"). For the reasons discussed below, the Court adopts the R&R and denies the motion to suppress.

## I. FACTS

The Court finds the following facts based on the testimony at the suppression hearing, along with exhibits provided to the Court. On November 25, 2018, two college students in Morgantown, West Virginia, reported a burglary at their home while on holiday break. Officer Dakota Moore ("Moore") with the Morgantown City Police Department responded to the call at 112 Cornell Avenue, Morgantown, West Virginia 26505. Moore walked through the home with the

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

students and learned that someone had allegedly stolen a number of items, including a 12-gun safe containing a passport, social security card, $1500 in cash, and three 12-gauge shotguns. Moore noticed evidence of forced entry into the home and into two of the bedrooms.[1] Moore noticed marks along the drywall in the stairwell, indicating that something had been dragged down the stairs and against the walls. He also noticed slide marks in the yard where it seemed that a heavy object had been dragged through the yard, along the side of the house, and toward the driveway.

Moore approached a neighbor who was outside while Moore was at the home. He explained to the neighbor what had happened and asked her if she had seen anything unusual or out of place. The neighbor had been living there for "quite some time" and was familiar with the area. She told Moore that she had observed a U-Haul van pull up to the residence between 1:00 a.m. and 2:00 a.m. the night before, and the U-Haul van had backed into the driveway.

---

[1] Specifically, Moore noticed that one of the bedroom doors upstairs exhibited gouge marks and scratches. One of its panels had been kicked through and had shoe prints on it. Another bedroom, with a padlock on it, had been broken into. The third bedroom, which was used for storage, had previously contained the 12-gun safe. The safe had been bolted to the floor. Moore observed a square mark where the safe had been on the carpet and saw that it had been forcibly removed. Moore noticed that a window on the back side of the house exhibited pry marks from some sort of "prying tool." The locking mechanism at the top of the bottom window pane had been broken free.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

She saw two individuals wearing dark clothing and, at first, thought they were the two students who live in the home. She did not notice the individuals' races but said that they were wearing dark clothing. She did not see their faces. She saw them carry something large to the van and drive away.

After speaking to the neighbor, Moore searched for records of U-Haul rentals in the surrounding area and began to compile a preliminary list of suspect vans. Moore spoke to the neighbor again and showed her several pictures of different styles of U-Haul vans. She identified the van as a Ford Transit rather than a Chevy. Moore contacted the regional contact for U-Haul, and the regional contact provided him with a list of three different dealers who had rented Ford Transit vans during the time frame at issue.

Moore examined a tire track in the yard from where the U-Haul had been parked. The U-Haul had driven over the curb and partially through the yard. Based on the tire track, Moore found that it was a passenger, "all-season type" of tire, which is consistent with a Ford Transit tire and different from a Chevy tire. Knowing that the van was backed into the driveway, Moore deduced that the mud from the tire track in the yard would have been found on the rear passenger side tire of the van.

**USA V. PARRISH**                                                       1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

Moore examined the individual Ford Transit vans rented out by U-Haul at the time of the alleged burglary. The first two vans he examined did not have mud on them or "anything that stood out." The last van Moore examined was at Exit 1 U-Haul in Morgantown ("Exit 1 U-Haul"). Moore noticed mud halfway up the side wall on the rear passenger side of the van. He noticed that the mud on the tire matched the type of mud at the allegedly burglarized home: more of a "yellow, clay type of mud." Moore spoke with the manager at Exit 1 U-Haul and asked if anything about the van stood out when it was returned. The manager stated that the inside of the van was covered in mud, and the renter had been charged a $25.00 cleaning fee.

The manager told Moore that the van had been rented to DeRon Parrish, who had provided Exit 1 U-Haul with his address: 321 Brockway Avenue, Morgantown, WV 26501. DeRon Parrish also provided Exit 1 U-Haul with a Maryland driver's license. Moore does not recall the Maryland address on the license and did not investigate the Maryland address further. Moore noted that the van had been driven 16 miles during DeRon Parrish's rental period.[2] Via Google search, Moore learned that 16 miles is the approximate distance

---

[2] Specifically, Moore indicates in his police report that the van had been rented with 7130 miles on the odometer and was returned with 7146 miles on the odometer. See ECF No. 32-2 at 9.

**USA V. PARRISH** 1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

the van would have traveled if it went from Exit 1 U-Haul to 112 Cornell, to 321 Brockway, and back to Exit 1 U-Haul.[3]

Moore then drove to 321 Brockway, Apartment B. He noticed that the mailbox said "A. Parrish." Moore walked around to the back of the apartments. He could not see anything in plain view because the windows were blocked off. He observed some mud outside the door and smelled raw marijuana emitting from inside the apartment. Moore stated that he knew it was raw marijuana because he became familiar with the smell at the police academy and has experienced the smell in the field. Moore ran 321 Brockway in his computer system and learned that Andre Parrish lived at the address. Through social media, he learned that DeRon and Andre Parrish are brothers.

On November 27, 2018, Moore drafted and signed the affidavit for a search warrant. The Affidavit and Complaint stated the following:

> On 11/25/2018, the victim called 911 for a burglary report. I responded and discovered

---

[3] In the Government's Response, it cites additional information about the van. See ECF No. 37 at 3. This information was not part of Moore's testimony during the suppression hearing. Moore learned that the van was rented on Saturday, November 24, 2018, at 4:45 p.m. (approximately eight hours before the alleged burglary took place). The van was returned to Exit 1 U-Haul on Sunday, November 25, 2018, at 9:57 a.m. (approximately eight hours after the alleged burglary took place). Id. This is described in the police report. See ECF No. 32-2 at 8.

USA V. PARRISH                                                  1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

> that the victim's residence had been forceably [sic] entered and several items stolen, including a 12 gun safe containing two shotguns and $1500 cash. A witness stated that she had seen the suspects in a U-Haul van. I located the suspect van which had been rented to a "Deron Parrish" at 321 Brockway Avenue, Apartment B at the time of the incident.

The magistrate judge issued a warrant to search DeRon Parrish's home for the missing items. The warrant was executed on the same day at 3:30 p.m. DeRon Parrish was at home when the officers arrived. The officers searched the home and found the 12-gauge shotguns, the safe, nearly $3,000 in cash, the victim's passport and social security card, and muddy shoes.

Moore did not personally present the affidavit to the magistrate judge and does not recall which officer presented the affidavit. He cites it as "common practice" in the police department to leave a signed affidavit on the sergeant's desk, and someone on the next shift will swear to the affidavit and have it signed by a magistrate judge. Moore testified that his training, through the State Police Academy and the FTA Field Training Program, in applying for a search warrant, is to provide the bare essentials for establishing probable cause because the magistrate judges are busy and do not have time to read an entire report.

Moore testified that the magistrate judge will always put the presenting officer under oath. Moore did not know who presented

USA V. PARRISH                                                    1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

this particular affidavit to the magistrate judge, which magistrate judge it would go to, whether the presenting officer provided any information to the magistrate judge, or whether the magistrate judge had any questions about the search warrant or the application for it. Moore did not talk to the magistrate judge about the case or talk to the officer who delivered the search warrant. Moore did not witness an oath or affirmation take place for the warrant application.

## II.  ARGUMENTS BY THE PARTIES

Defendants argue in their motion to suppress that the physical evidence found in their home should be suppressed because (1) the affidavit was so bare that it lacked the necessary probable cause to support it, (2) the affidavit failed to give any reason to believe that the stolen property was inside the home, and (3) the Leon good-faith exception does not apply. In response, the Government argues that the warrant did not violate the Fourth Amendment because it was sworn before a magistrate, supported by probable cause, and executed in good faith.

After the suppression hearing, Defendants argue in their supplemental memorandum that the Fourth Amendment is violated when an officer drafts an Affidavit and Complaint for a search warrant and leaves it for another officer to deliver to a magistrate, where

USA V. PARRISH                                              1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

neither officer communicates, collaborates, or coordinates in the same investigation. In the Government's supplemental brief, it argues that this practice (one officer writing an affidavit and another swearing to it) is constitutional. The Government also presents new information in its brief.[4]

### III. STANDARD OF REVIEW

When reviewing a magistrate judge's R&R, the Court must review de novo only the portions to which an objection has been timely

---

[4] In the Government's supplemental brief, counsel writes that he spoke to other officers at the Morgantown Police Department who advised him that the warrant application procedure described by Moore was "not the standard protocol of the department." ECF No. 50 at 2. Lieutenant P.J. Scott informed counsel that he saw Moore on the afternoon the warrant was signed and that a review of Moore's timesheets indicates that Moore likely swore to the affidavit himself. Id. Thus, counsel argues that Moore "mistakenly believed" that he did not personally present the warrant affidavit and application. Id. Further, the Government determined that Monongalia County Magistrate Darris Summers executed the warrant. Id. Counsel provides screenshots of the signature at issue and a previous signature by Magistrate Summers, arguing that the similarity of the signatures confirms that they are the same. Id. at 2–3.

Based on this "recently discovered information," Judge Aloi informed the parties that he wanted to hold an additional suppression hearing. See ECF No. 52-1. Defendants objected to holding an additional hearing. See ECF No. 52. Judge Aloi ultimately did not hold an additional hearing and included his reasoning on this decision in his R&R. See ECF No. 57 at 21–23. The parties did not file objections to this portion of the R&R, so the Court reviewed for clear error Judge Aloi's decision not to hold an additional hearing. In reaching its decision today, the Court did not consider the "recently discovered information" cited in the Government's supplemental brief.

USA V. PARRISH                                              1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the [parties do] not object." Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a recommendation to which no objection has been made unless they are clearly erroneous. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). Here, the R&R provided that parties must file objections by Friday, October 4, 2019. ECF No. 57 at 37. Defendants timely filed objections on October 4, 2019. See ECF No. 59. They objected to the conclusion that the motion to suppress be denied and argue:

> 1) there is no evidence that the search warrant was procured through oath or affirmation; 2) the affidavit was insufficient to provide probable cause to search because there was no nexus between the burglary and the defendants' home; and 3) the magistrate acted as a rubber stamp and abandoned his detached and neutral role and the Leon good faith exception does not apply to salvage the search warrant in this case.

Id. at 1.

## IV.  DISCUSSION

The Fourth Amendment to the Constitution of the United States provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

USA V. PARRISH                                              1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59],
AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Absent certain exceptions, a "neutral and detached magistrate" must find probable cause to support a warrant. See Illinois v. Gates, 462 U.S. 213, 240 (1983).

When the sufficiency of a search warrant and its supporting affidavit is challenged, the Court reviews the issuance of the warrant de novo. United States v. Zenone, 153 F.3d 725, at *8 (4th Cir. Aug. 10, 1998) (table) (citations omitted). In this review, "great deference is . . . given to a magistrate's assessment of facts when making a determination of probable cause." Id. at *4. Courts are not to invalidate warrants based on a "hypertechnical, rather than . . . commonsense," interpretation of an affidavit. Gates, 462 U.S. at 236. The Court must determine whether a "substantial basis" exists for the magistrate's decision. United States v. Hodges, 705 F.2d 106, 108 (4th Cir. 1983).

**A.   The warrant is supported by probable cause.**

In deciding whether a search warrant is supported by probable cause, the first question is "whether the items to be seized are evidence of criminal activity, . . . and second, . . . 'whether it is reasonable to believe that the items to be seized will be found

**USA V. PARRISH** 1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

in the place to be searched.'" United States v. Wienke, 733 F. App'x 65, 69 (4th Cir. 2018) (unpublished) (per curiam) (internal citations omitted). To determine whether these requirements are met, courts examine the totality of the circumstances. Id.

To establish that it is reasonable to believe that the items to be seized will be found in the place to be searched, "an affiant must show a sufficient 'nexus between'" them. Id. (citation omitted). Whether there is a sufficient nexus depends on "the nature of the item[s] and the normal inferences of where one would likely keep such evidence." Id. (emphasis removed). "[O]fficers may draw conclusions from their experience, judgment, and observations when identifying the place to be searched." Id. (citations omitted). "The magistrate may draw a reasonable inference from the facts stated if the affiant does not assert facts 'directly linking the items sought to the defendant's residence.'" Id. at 70 (citations omitted).

In determining what constitutes a "normal inference," courts have written, generally, that "it is reasonable . . . to assume that a person keeps his possessions where he resides." Id. The Fourth Circuit has written, "For example, 'the use of a gun in the commission of a crime is sufficient to establish a nexus between

USA V. PARRISH                                               1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59],
AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

the suspected criminal's gun and his residence because guns are generally kept in the home." Id.

Here, in examining the totality of the circumstances, the affidavit establishes a sufficient basis for the magistrate to find probable cause to search Defendants' residence. The items to be seized (guns, cash, and a safe) are evidence of criminal activity (burglary). Although brief, the affidavit summarizes the steps taken in Moore's investigation: a neighbor saw two individuals with a U-Haul, Moore tracked down a suspect U-Haul, and Moore determined that it was rented to DeRon Parrish at 321 Brockway Avenue, Apartment B, at the time of the incident. Moore was not required to list in detail each step he took in his investigation. Defendants take issue with the affidavit's reference to "the suspect van" and argue that Moore should have used more conditional language. The Court disagrees with Defendants' argument. The term "suspect" is not an unconditional term as Defendants suggest, nor is it so pejorative as to taint the entirety of the affidavit or search. The van is suspected – not yet proven – to be involved in the burglary.

Further, the affidavit sufficiently establishes a nexus between the evidence of the crime and Defendants' residence. The affidavit indicates that Moore tracked down the U-Haul that was

USA V. PARRISH                                              1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

likely present, and Moore learned that the U-Haul had been rented to DeRon Parrish. It is reasonable that a magistrate would draw the inference that these items, if in the suspect's possession, would be kept in his home. Defendants argue that the items "could have been sold or bartered in the same day," but this does not change the reasonable inference that the items would be inside the home. Based on the information provided to Moore by Exit 1 U-Haul, DeRon Parrish's home was at 321 Brockway Avenue, Apartment B, which is the address Moore noted in his affidavit. For these reasons, the warrant was supported by probable cause.

**B.   The warrant is supported by oath or affirmation.**

The Fourth Amendment's Warrant Clause "does not require a signed and sworn affidavit, but only that probable cause be supported by oath or affirmation." United States v. Henry, 931 F. Supp. 452 (S.D.W. Va. 1996) (citing United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994)). Magistrate judges may consider both written and oral testimony when "making probable cause determinations during warrant proceedings[.]" Clyburn, 24 F.3d at 617 (citations omitted).

It is well-established that a police officer may swear to a warrant affidavit based on hearsay or on information from an informant. See United States v. Loy, 569 F. Supp. 2d 601, 607

USA V. PARRISH                                                         1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

(N.D.W. Va. 2008) (finding that "[p]robable cause can be founded on information received from an informant if, in view of the totality of the circumstances, the judicial officer is satisfied with the veracity and basis of knowledge of the informant"); see also United States v. Sweeney, 1:08cr77, 2009 WL 441442, at *2 (N.D.W. Va. 2009) (finding that "[a]n affidavit can be based on hearsay as long as there is a substantial basis for crediting the hearsay").

This Court has held that warrants are constitutionally sound when an officer swears to an affidavit prepared by a different officer. See United States v. Gomez, No. 1:17cr71, 2018 WL 2416584 (N.D.W. Va. May 29, 2018). In Gomez, an officer in Morgantown, West Virginia, emailed a warrant application packet, including an affidavit, to an officer in Huntington, West Virginia. Id. at *3. The Huntington officer presented the affidavit to a magistrate judge in Huntington. Id. The magistrate found probable cause to search a home. Id. The Huntington officer then executed the search warrant and seized a number of items from the home. Id. The defendants argued that the seized evidence should be suppressed because it was based on a defective search warrant. Id. at *6. They argued that the Huntington officer's "'oath was an oath in name only' because he 'knew little about the case and had no

USA V. PARRISH                                                 1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59],
AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

personal knowledge of the facts.'" Id. The Government argued that there was no Fourth Amendment violation because the Huntington officer "swore to the veracity of facts provided to him by another law enforcement officer." Id.

The Gomez court found that the warrant was constitutionally sound, noting that the Eighth Circuit has upheld this practice. See id. (describing the decision in United States v. Jones, 471 F.3d 868, 873-74 (8th Cir. 2006), as finding a warrant constitutional when the "undercover detective collected the information, prepared the affidavit and passed it to [another detective] for presentation to a judge"). The Gomez Court wrote:

> The Eighth Circuit concluded that "nothing" about such an arrangement even "suggest[ed] a faulty oath or defective warrant." Rather, "*where a detective other than the affiant is the source of the information in the affidavit, the other detective is the functional equivalent of a reliable informant*." Id. at 874 (citing United States v. Hyten, 5 F.3d 1154 (8th Cir. 1993)); see also United States v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004) (acknowledging that probable cause may be "based in part on an informant's hearsay").

Id. (emphasis added). Here, the affidavit was signed by Moore and presented to the magistrate judge by another officer. The Court finds that this procedure satisfies the requirements of the Fourth Amendment.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

Defendants argue in their objections that there is no evidence of oath or affirmation, and, therefore, the warrant is defective. To the contrary, Defendants bear the burden of showing that the disputed warrant violated their Fourth Amendment rights. See United States v. Dickerson, 655 F.2d 559, 561 (4th Cir. 1981). They have not met this burden. Moore testified that the magistrates always make the presenting officer swear on the affidavit before the magistrates sign it. Further, although contrary to Moore's testimony, the police report states that Moore obtained the warrant himself. See ECF No. 32-2 at 9. The warrant itself says, by the magistrate's signature, that it was "sworn to me" (to the magistrate). ECF No. 32-1 at 1-2. Although it is not clear in the record who actually swore to the affidavit, Defendants have certainly not met their burden of proving that it did not occur.[5] Based on the evidence that has been submitted and the lack of evidence submitted by Defendants on this issue, the Court finds that the warrant was issued after oath or affirmation.

---

[5] The Court believes this to be the case under either scenario presented by the Government. Defendants would not satisfy their burden here if Moore had presented the affidavit to the magistrate himself, and, for the reasons articulated, the Court finds Defendants failed to satisfy their burden based on the record before the Court.

USA V. PARRISH                                                1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

**C.    The <u>Leon</u> good faith exception applies.**

Assuming for the sake of argument that the warrant in this case was defective, the Court would still deny the motion to suppress based on the good faith exception set forth in <u>United States v. Leon</u>, 468 U.S. 897 (1984). Under <u>Leon</u>, "a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" <u>United States v. Bynum</u>, 293 F.3d 192, 195 (4th Cir. 2002) (quoting <u>Leon</u>, 468 U.S. at 922 n.23). "Typically, 'a warrant issued by a magistrate . . . suffices to establish that a law enforcement officer has acted in good faith in conducting the search' and thus searches executed 'pursuant to a warrant will rarely require any deep inquiry into reasonableness.'" <u>United States v. Andrews</u>, 577 F.3d 231, 236 (4th Cir. 2009) (quoting <u>Leon</u>, 468 U.S. at 922)).

The Supreme Court of the United States has found that the good faith exception does not apply in the following circumstances:

> (1)  'the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;

USA V. PARRISH                                          1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

> (2) the magistrate acted as a rubber stamp for the officers and so wholly abandoned his detached and neutral judicial role;
>
> (3) an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4) a warrant [is] so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid.'"

Bynum, 293 F.3d at 195 (quoting Leon, 468 U.S. at 923). Defendants argue that the good faith exception does not apply for these reasons:

> (1) the affidavit contains at least one knowing or reckless falsity;
>
> (2) the terse and vague nature of the Affidavit suggest that the magistrate was acting as a rubber stamp at the time the warrant was issued;
>
> (3) the Affidavit does not provide the magistrate with a substantial basis for determining probable cause either that Mr. Parrish committed the crime or that the safe was in Mr. Parrish's apartment; and
>
> (4) it was facially deficient.

ECF No. 32 at 10.

   Here, the exceptions to the Leon rule do not apply. First, Moore did not include in the affidavit information that was either

USA V. PARRISH                                                1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

known to be false or provided with reckless disregard for the truth. This is evidenced above in his detailed recount of his investigation.

Second, there is no evidence that the magistrate judge acted as a "rubber stamp." As discussed above, considering the facts provided in the affidavit and the reasonable inferences the magistrate is entitled to make, the affidavit, albeit short, was sufficient to establish probable cause to search Defendants' home. The Court agrees with Judge Aloi that this case is much different from, for example, Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979) (finding that the magistrate acted as a rubber stamp when he personally took part in the search and issued an open-ended warrant, acting as "an adjunct law enforcement officer"). Here, the magistrate judge engaged in no such behavior, and it was objectively reasonable for him to rely on the affidavit to find probable cause. The third exception to Leon does not apply for the same reason. Finally, the warrant is not facially deficient. It describes, specifically, items to be seized that Moore believed were in DeRon Parrish's possession: a 12-gun safe, two shotguns, and $1500 in cash. If the warrant were, hypothetically, defective, the Leon good faith exception would salvage its constitutionality.

**USA V. PARRISH**                                                  1:19-CR-30

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 57], OVERRULING DEFENDANTS' OBJECTIONS [ECF NO. 59], AND DENYING MOTION TO SUPPRESS [ECF NO. 32]**

### V.  CONCLUSION

Finding no clear error in the remaining portions of the R&R, and for the reasons discussed above, the R&R is **ADOPTED** [ECF No. 57], and Defendants' objections are **OVERRULED** [ECF No. 59]. The pending motion to suppress is **DENIED** [ECF No. 32].

DATED: October 15, 2019

*Tom S Kleeh*
_____
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE